ORDERED.

**Dated: March 27, 2019**

_____
Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

JASON ROY COLLINS,

    Debtor.

Chapter 7
Case No. 3:18-bk-0630-JAF

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon the Objection to Debtor's Amended Claim of Exemptions (Doc. 95) and Motion for Turnover of Property (Doc. 41), filed by GORDON P. JONES, Chapter 7 Trustee (the "Trustee"). A trial on these matters was held on November 13, 2018. The Trustee and Debtor both filed post-trial briefs. (Docs. 105 & 111). Upon the evidence and argument presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On March 1, 2018 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Doc. 1). Debtor's wife (the "Wife") did not file a bankruptcy petition. Debtor claims a variety of personal property as exempt under the tenancy-by-the-entirety exemption, including a 2016 Continental boat trailer (the "2016 Trailer"). (Doc. 94 at 3).

The 2016 Trailer

On the Petition Date, Debtor and his Wife owned a pontoon boat (the "Pontoon Boat"). All parties agree the Pontoon Boat is owned in tenancy by the entirety. (Doc. 101, ¶ 3(ii)); (Doc. 99-1 at 2). When the Pontoon Boat was originally purchased in Tennessee, it came with its own trailer (the "Original Trailer"). The couple moved to Florida, where the Original Trailer was exposed to salt water. Salt-water corrosion caused the Original Trailer to become unserviceable, and the 2016 Trailer was purchased as a replacement. The 2016 Trailer is only used to transport the jointly-owned Pontoon Boat. The couple uses the Pontoon Boat to fish, to take their grandkids on the water, and to spend time together with family.

No certificate of title exists for the 2016 Trailer.[1] The 2016 Trailer is registered to only Debtor. The Original Trailer was registered in Florida to both Debtor and his Wife. When the Original Trailer and Pontoon Boat were purchased, both spouses were present. (Docs. 99-6, 99-7, and 99-8). When the 2016 Trailer was purchased, only Debtor was present; the Wife was at work.

The 2016 Trailer was purchased, in July 2015, with proceeds of a loan the Wife took against her retirement account. The proceeds of the loan were deposited into Debtor's and his Wife's joint checking account in the amount of $4,010.65 (after fees). Without objection, Debtor entered into evidence a monthly statement (Doc. 99-2 at 2) and a disbursement information sheet (Doc. 99-3 at 2) from the retirement-plan management company. These forms show a gross loan disbursement of $4,100.00 and a net disbursement of $4,010.65. Statements for the joint checking account show a deposit of $4,010.65 on August 6, 2015 and a check withdrawal of $3,505.03 on August 12,

---

[1] Florida law does not require a certificate of title for trailers with a net weight of less than 2,000 pounds. § 319.20, Fla. Stat. (2018). The 2016 Trailer has a net weight of 900 pounds. (Doc. 98-14 at 2); (Doc. 99-8 at 2).

2

2015. (Doc. 99-4 at 2-4). The 2016 Trailer invoice shows a down payment of $500.00 and a final payment of $3,505.03, totaling $4,005.03.

The Wife testified the two have been married for twenty-three years and that "everything we've purchased, we've purchased together." Both spouses make decisions concerning the purchase of property; neither one nor the other wholly controls household finances. Both spouses fully control and have access to the 2016 Trailer. Debtor and his Wife have always intended to own the 2016 Trailer as tenants by the entirety. Based on their testimony and demeanor, the Court finds Debtor's and his Wife's testimony credible.

### Joint Claim

VyStar Credit Union ("VyStar") is the only joint creditor in this case. VyStar's claim pertains to an unsecured line-of-credit (the "VyStar Joint Claim"). (Claim 2-1). The credit agreement between the couple and VyStar was admitted into evidence (the "VyStar Credit Agreement"). (Doc. 98-12 at 5-7). Both Debtor and his Wife are parties to the VyStar Credit Agreement. It is undisputed that there has been no default under the VyStar Credit Agreement; all payments were current as of the Petition Date and date of trial.

### Stipulations

The parties' written stipulation of facts lists several items of personal property that both parties agree are owned by Debtor and his Wife as tenants by the entirety. (Doc. 101 at 1-2, ¶ 3). The 2016 Trailer is the only property about which ownership is disputed. The Trustee seeks to administer all tenancy-by-the-entirety property for the benefit of VyStar. The Trustee testified that, if he is permitted to administer tenancy-by-the-entirety property in this case, he will file an adversary proceeding under § 363(h) to sell such property. He testified that any proceeds from the

3

sale of joint property would go only to VyStar. The Trustee would also receive his commission and administrative expenses related to those proceeds.

## CONCLUSIONS OF LAW

"Commencement of a bankruptcy case creates an estate consisting of all debtors' property pursuant to § 541." In re Parker, 147 B.R. 810, 812 (Bankr. M.D. Fla. 1992). "However, a debtor may exempt certain property from the estate pursuant to § 522." Id. "Section 522 provides for two exemption schemes. Florida has opted out of the federal exemptions and provides for exemptions under state law." Id.; § 222.20, Fla. Stat. (2018).

Here, the Trustee seeks to administer all tenancy-by-the-entirety property for the benefit of VyStar. To that end, the Trustee asks the Court to recede[2] from its prior holding in Grant v. Himmelstein (In re Himmelstein), 203 B.R. 1009 (Bankr. M.D. Fla. 1996), which requires a joint in personam judgment against both spouses to administer tenancy-by-the-entirety property in bankruptcy cases with only one filing spouse. Alternatively, the Trustee seeks a determination that the 2016 Trailer is not held in tenancy by the entirety so that it may be administered for the benefit of all creditors. The Court addresses these two issues in turn.

**A.    The meaning of "exempt from process under [Florida] law."**

Under § 522(b)(3)(B) of the Bankruptcy Code, a Florida debtor's exempted property includes "any interest in property in which the debtor had [ ] an interest as a tenant by the entirety or joint tenant to the extent that *such interest* as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law [i.e., Florida law]." 11 U.S.C. § 522(b)(3)(B)

---

[2] Technically, the Trustee asks whether the Court receded from this key holding in its more recent opinion, In re Qamar, 2017 WL 8219533 (Bankr. M.D. Fla. May 19, 2017). Qamar, however, was a jointly filed case. The instant issue could not have arisen in Qamar, and that opinion does not speak to the present issue in any way.

(emphasis added). It is the property against which the creditor must be able to seek process, not the property owner. Florida law controls disposition. § 222.20, Fla. Stat. (2018).

Under Florida law, "only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property." Beal Bank, SSB v. Almand & Associates, 780 So. 2d 45, 53 (Fla. 2001). It is important to note, however, that the Florida Supreme Court did not use the word "creditor" as that term is defined under Title 11. In Beal Bank, the court's use of "creditor" referred to parties with a final judgment (i.e., the actual ability to levy or attach property), whereas, under Title 11, a "creditor" is simply a party "that has a claim."[3] 11 U.S.C. § 101(10) (2018); Beal Bank, 780 So. 2d at 53. This is a subtle but important distinction.

In light of the above, to determine whether a joint in personam judgment is required to administer tenancy-by-the-entirety property in a bankruptcy case with only one filing spouse, the Court must construe the phrase "exempt from process under [Florida] law." 11 U.S.C. § 522(b)(3)(B) (2018). The statute's plain language controls unless there is an ambiguity. Kehoe v. Fid. Fed. Bank & Trust, 421 F.3d 1209, 1212 (11th Cir. 2005). An ambiguity arises when applying this language to cases with a non-filing spouse and a filing spouse who asserts the tenancy-by-the-entirety exemption under Florida law. As applied to such a case, it is not clear whether, to defeat the exemption as contemplated by § 522(b)(3)(B), the Trustee must show: 1) a joint creditor that has the actual ability to levy joint property in the case or 2) a joint creditor that has the mere theoretical ability to levy joint property under some set of hypothetical facts that are not present in the case at bar. See Matter of Anderson, 132 B.R. 657, 659 (Bankr. M.D. Fla. 1991) ("As can be

---

[3] "The term 'creditor' means—(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim." 11 U.S.C. § 101(10) (2018).

seen, the linchpin of the whole inquiry is the existence of a joint creditor of the debtor and non-debtor who has the ability to have process issued in its favor.").

Case law that requires a joint judgment (e.g., Himmelstein), falls into the first category of cases and requires an actual ability to levy joint property. See, e.g., Himmelstein, 203 B.R. 1013-14; Kosto v. Lausch (In re Lausch), 16 B.R. 162, 165 (M.D. Fla. 1981). In contrast, case law requiring no final judgment (or even a default), falls into the second category and requires only a hypothetical/theoretical ability to levy joint property. See, e.g., In re Planas, 199 B.R. 211, 217 (Bankr. S.D. Fla. 1996), rev'd on other grounds, 1998 WL 757988 (S.D. Fla. Aug. 21, 1998); In re Monzon, 214 B.R. 38, 42 (Bankr. S.D. Fla. 1997); Sumy v. Schlossberg, 777 F.2d 921, 928 n.14 (4th Cir. 1985).

Weighing the controlling requirements of Florida property law, Florida law on execution, and the intent of Title 11, the Court concludes that, unless a joint creditor in the case has the actual ability to levy tenancy-by-the-entirety property pursuant to Florida law, such property remains exempt under § 522(b)(3)(B). The theoretical ability to levy joint property, under hypothetical facts that are not present, is insufficient to defeat the exemption and extinguish the non-filing spouse's entireties interest in the property. The Court adheres to its prior holding requiring a joint judgment against both spouses for a trustee to administer tenancy-by-the-entirety property in cases with only one filing spouse. Himmelstein, 203 B.R. at 1016. Once the exemption is determined to be inapplicable, the door is opened and joint property may be administered for the benefit of joint creditors, with excess proceeds remaining exempt as tenancy-by-the-entirety property. Id.

The Trustee contends that VyStar could (hypothetically) seek prejudgment remedies against joint property even without having a joint final judgment, citing In re Monzon, 214 B.R. 38, 42 (Bankr. S.D. Fla. 1997). Monzon and the Trustee are correct that sometimes prejudgment

6

remedies can be issued against property before a final judgment is rendered. Under Florida law, however, prejudgment remedies are available only in very narrow circumstances. The purpose of prejudgment remedies is to maintain the status quo of leviable property or prevent removal/waste/injury to the property pending final adjudication of the creditor's claims.[4] Importantly, Florida law requires a creditor seeking a prejudgment remedy to post a bond equaling double the amount claimed by the creditor (or double the property value in the case of replevin).[5] That is, prejudgment remedies necessarily expect that a final judgment will ultimately be rendered in favor of the creditor. If the creditor does not prevail on the liability claim, the bond is used to pay all costs and damages incurred by the defendant.[6] Given this, the Court is not convinced that the phrase "exempt from process under [Florida] law," in § 522(b)(3)(B), contemplates prejudgment remedies *in isolation from* a final judgment. Instead, the Court reads "process under [Florida] law" as referring to a levy that would lead to or result from a final judgment of liability. After all, in Florida, a prejudgment remedy granted in a case in which the creditor's liability claim ultimately fails, results in no remedy at all for the claimant-creditor.

It is axiomatic that, for a party with a joint claim to levy joint property, the property owner must be liable on that joint claim. See, e.g., Beal Bank, 780 So. 2d at 53. This premise is necessary to the Florida Supreme Court's holding in Beal Bank. Further, this premise comports with Title 11, which defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12) (2018).

---

[4] See § 78.068, Fla. Stat. (2018) (prejudgment replevin); §§ 76.04, 76.05 Fla. Stat. (2018) (attachment); § 77.031, Fla. Stat. (2018) (prejudgment garnishment); 13 Fla. Jur 2d Creditors' Rights § 134 ("A prejudgment writ of garnishment is a civil remedy available to a party to secure the anticipated money judgment the party ultimately expects to recover."); 13 Fla. Jur 2d Creditors' Rights § 58 ("[Attachment] authorizes a seizure of the defendant's property at the commencement of suit before there has been a judicial determination as to the liability.").

[5] § 76.12, Fla. Stat. (2018) (attachment bond); § 78.068(3), Fla. Stat. (2018) (replevin bond); § 77.031(3), Fla. Stat. (2018) (garnishment bond).

[6] § 76.12, Fla. Stat. (2018); § 77.031(3), Fla. Stat. (2018).

Here, there is no dispute that Debtor and his Wife have never defaulted under the VyStar Credit Agreement. Not only does VyStar lack a joint judgment, VyStar could not obtain a final judgment nor prejudgment remedy under the present facts. There is no possibility that VyStar could obtain process against any joint property in this case. Under any interpretation, all joint property in this case is exempt from process under Florida law. To hold otherwise would be to rewrite Florida law and ignore the requirements of § 522.

**B.      The 2016 Trailer is held in tenancy by the entirety.**

"[T]he burden is on the party objecting to exemptions to prove, by a preponderance of evidence, that the exemptions are not properly claimed." In re McFarland, 790 F.3d 1182, 1186 (11th Cir. 2015); Fed. R. Bankr. P. 4003(c). In Florida, "[p]roperty held as a tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the [property] must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). Beal Bank, SSB v. Almand & Associates, 780 So. 2d 45, 52 (Fla. 2001). "When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it 'per tout,' meaning that each spouse holds the 'whole or the entirety, and not a share, moiety, or divisible part.'" Id. at 53. Florida common law establishes a "presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property." Id. at 57; In re Newcomb, 483 B.R. 554, 559 (Bankr. M.D. Fla. 2012).[7]

---

[7] "This case highlights the fact that the Bankruptcy Code does not always incorporate a state's definition of property into section 541(a)(1). By writing in section 522(b)([3])(B) that entireties property is exempt from the bankruptcy estate, Congress implies that an individual's entireties property is a 'legal or equitable interest' in property that is part of his bankruptcy estate, despite the fact that [Florida] law does not consider entireties property to be owned by an individual." In re Arango, 992 F.2d 611, 614 (6th Cir. 1993) (discussing Tennessee law).

8

Here, the Trustee argues the unities of interest and title are not present as to the 2016 Trailer.[8] The Trustee points to three facts to support his argument: a) the 2016 Trailer is registered only in the name of Debtor; b) Debtor purchased the trailer alone, with only his name on the dealer invoice (Doc. 99-5); and c) the official form transferring the vehicle registration from the Original Trailer to the 2016 Trailer is signed by Debtor alone (Doc. 105 at 2-3).

While these facts are true, they are explained by the fact that Debtor purchased the trailer while his Wife was at work. The use of the Wife's retirement funds to pay for the trailer shows she was directly and materially engaged in the transaction even though she was not present. The purchase invoice does not defeat the unity of title because the invoice is not an instrument of conveyance. (Doc. 99-5). Rather, it is evidence of the transaction.

As with most personal property, no formal record of title exists because Florida law does not require a certificate of title for trailers less than 2,000 pounds. § 319.20, Fla. Stat. (2018); (Doc. 98-14 at 2); (Doc. 99-8 at 2). The Trustee looks to treat the vehicle registration as evidence of ownership. Florida law does not treat vehicle registration as evidence of ownership in the same manner it treats a certificate of title. See generally 42 Fla. Jur 2d Property § 15 (proof of title or ownership); Birmingham Fire Ins. Co. v. Rosado, 42 So. 3d 896, 898 (Fla. 5th DCA 2010). But even viewing, for the sake of argument, the registration as evidence that only Debtor has an interest in the 2016 Trailer, the use of the Wife's retirement funds to pay for the trailer and the testimony that they purchased the trailer together for their jointly owned Pontoon Boat outweighs any evidence that only Debtor has an interest in the 2016 Trailer. The only conclusion supported by the evidence is that Debtor and his Wife have an identical and complete interest in the 2016 Trailer

---

[8] Debtor and his Wife intend to own the 2016 Trailer as tenants by the entirety, just as they own the Pontoon Boat and previously owned the Original Trailer. The unities of time, survivorship, and marriage are not disputed. As to the unity of possession, both spouses exercise full and complete control over the 2016 Trailer.

and that their interests commenced at the same time, as a result of a single transaction. Thus, the unities of interest and title are present. The Trustee has failed to overcome Florida's presumption that the 2016 Trailer is owned in tenancy by the entirety.

## CONCLUSION

The Court adheres to its holding in <u>Himmelstein</u> concerning the requirement for a joint in personam judgment of liability before a trustee may administer tenancy-by-the-entirety property in a case with only one filing spouse. No joint creditor in this case retains the actual ability to levy on joint property; therefore, all joint property remains exempt under the tenancy-by-the-entirety exemption. Further, the Trustee has failed to rebut Florida's presumption that the 2016 Trailer is held in tenancy by the entirety. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.